Second case, United States v. Pendergrass. Good morning again, Ms. Strickland. It's a busy week for you. Are you ready to argue? Good morning. May it please the court. The government violated Mr. Pendergrass' constitutional rights with the inordinate delay in indicting him in this case, and this court should remand him for an evidentiary hearing so that he can prove it. Both the district court and the government have faulted Mr. Pendergrass for not producing evidence to substantiate his claims, but he was denied that opportunity despite his repeated requests, and that was error. He put forth enough evidence and sufficient allegations to require an evidentiary hearing on both the Sixth Amendment constitutional speedy claim and the Fifth Amendment due process claim. Starting with the Sixth Amendment constitutional speedy trial issue, there was enough evidence to warrant an evidentiary hearing on whether Fulton County and the Atlanta Police Department were acting as agents of the United States government such that the speedy trial clock started upon his arrest for the same charges. Based on the evidence that Mr. Pendergrass presented, and he did present evidence at this issue, the magistrate judge even found that at the time the warrants were issued, federal law enforcement was assisting in the investigation. Federal agents were present during the search of his business. All the electronic devices were immediately turned over to the federal agents, and the state agents understood that there was a federal prosecution planned, and he tried to get more evidence of this. He issued subpoenas to the Atlanta Police Department and to Fulton County, and they basically did not produce all of the records that he requested, and APD even responded that some of the emails that he requested didn't exist because of the hacking event that is also part of the due process claim. So the district court and the magistrate judge basically proceeded as if his claim here was foreclosed, but the door is open here. There is not binding precedent from the Supreme Court or this court saying that the clock cannot start with a state arrest if there is an agency relationship there. And other circuits have also indicated that this could be the start to the constitutional speedy clock here. Can you answer this question for me? What do you think the standard is for you to show to get to the point where you get an evidentiary hearing? I think all he has to do is allege facts that if true would entitle him to relief. And so here he's done that as to both claims, and I think part of the error that the district court committed is that it said it was looking for concrete evidence to support his claims. But he did, in fact, proffer some evidence that he attached to his pleadings, and he alleged sufficient allegations here for both the Sixth Amendment speedy trial claim and the due process claim. So I guess, and maybe this is the law, but I just, so whenever a defendant alleges, it's sort of like a 12B6 review of a civil complaint, just when the defendant alleges that there was coordination between the federal government and state authorities and effort, like basically misconduct on the part of the federal government, then you get an evidentiary hearing on that? Well, Your Honor, I don't think that they can just generally allege coordination. I think the allegations have to be specific, but we have that here. We have, you know, the evidence that I just cited that the magistrate judge found. And so that, I believe, was enough for the court to have a hearing on this issue of whether this was the federal government directing the state government to do something for them. There wasn't a federal detainer here. Correct, Your Honor. There was not a federal detainer, but that is part of the issue here. There was evidence that the Atlanta U.S. Attorney's Office was talking to the Fulton District Attorney's Office. And so we don't have all of that information of what was discussed because there was no hearing. But then you have him being detained on the charges in Fulton County, and he's placed on bond for those charges until he's indicted in Ohio. So he's restrained during that period pursuant to the Atlanta charges, which our position is that's actually pursuant to the United States government's charges here. But the problem is we have cases like Bell and Russo that say even if it's a joint federal state investigation or the federal government is highly involved, the speedy trial time doesn't start running until the federal indictment. I think there's more to it here. And if we had the evidentiary hearing, we'd be able to prove it. It's not just coordination. It's not just like a joint task force. Here, our allegation is it's the federal government directing Fulton County to hold him on these charges. And then you have him going and serving his sentence for the Ohio case. And they are, BOP is contacting Fulton County and saying, there's this detainer on him. There's this detainer on him. That our position is that detainer is due to the federal government coordinating asking Atlanta and Fulton County to hold him. And Fulton County is responding and saying, oh, there's an open case. He's going to be indicted. And then later we learned that there was no open case at all. They never intended to indict him. What you get, Fulton County says we're going to indict him in 2017. What you get instead is a federal indictment. And so he is kept in prison during, for almost two years additional that he could have been in a halfway house because of this Fulton County case, which our allegation is really the Atlanta U.S. Attorney's Office case. So I think we have more than just a joint task force or some coordination. Our position is there was a direction by the United States government and we just didn't get a chance to prove that because we weren't able to issue subpoenas and call witnesses. Some of the information was missing due to the hacking event. And that also brings me briefly... So let me just go back to just... So you cite some out of circuit precedents for this idea. And they seem to suggest, I'm not really sure that they all agree, but they seem to suggest that you can only, that the speedy trial only applies before indictment in this circumstance when you've got an individual who's held by state authorities solely for the purpose of answering to federal charges or there's some kind of ruse between the feds and the state to defeat someone's speedy trial. How have you alleged that kind of thing here? I mean, you've alleged, I mean, that, you know, they're kind of working together. This, you know, he's got this sort of a complicated multi-jurisdictional thing going on. Where's the sort of the allegation of misconduct, I guess, is what I'm trying to get at. Well, what those cases talk about is exactly what we're alleging. We're alleging that there was never going to be a Fulton County case and that this was all to defeat the speedy trial clock. Because once they got in there and found evidence of the Ohio case and of this case, and it could be a city of Atlanta or Fulton County case, they decided to wait for the Ohio case to go through and then indict him later. And so I think that's exactly what we're alleging, that the Fulton County case was kind of a placeholder to keep him detained and under supervision until the federal government here finally decided to indict him. So that's the Sixth Amendment issue. But for the Fifth Amendment issue, you know, we have to have deliberate action by the government for a tactical advantage. And so the deliberate action here is what I've just described, you know, Fulton County acting for the federal government. And so for tactical advantage, our position is that it was to get that 404B evidence, the Ohio conviction, the Colorado conviction. And by waiting until there was a conviction, it's so much easier to get in and it's so much more powerful to a jury to say he was convicted of these charges. And I understand the government says it didn't come in, but that is not for lack of trying. They immediately filed a 404B notice saying that the prosecutorial need for this evidence was critical, that they needed to corroborate the co-defendant's testimony because he's the one that actually signs it, all of the documents in this case, and that they needed to prove his state of mind here because he's not the one acting. And that was exactly his defense. And so... You know, I've got to tell you, Ms. Strickland, I understand why you're making the argument you're making, and particularly in the light of what some other circuits have said. But in my former life, I was part of a lot of joint federal state investigations on the state side, and I never felt, never felt I was the Fed's agent. There's a lot of adversarialness to those relationships, and the Feds have a lot of power, and you're sometimes concerned about whether to charge because then it might foreclose a federal prosecution. You're just as worried that if you prosecute on state charges, then the Feds won't, and sometimes they have much more powerful tools in their arsenal. And it seems to me that our precedents very sensibly say the right attaches the speedy trial right on indictment, federal indictment, a bright line rule, and launching into phishing expeditions whenever their joint federal state investigations seems to me a very dangerous exercise. Yes, sir. I understand your experience, but I think you can kind of cut both ways, where the federal government is a powerful entity, and you know, I think in this case, all of the... But the notion that the state ever is the agent, to me, absent a detainer situation, that just strikes me as not how the real world works. I understand that, Your Honor. Our position is that we should have gotten more of a chance to prove that. So I think my time is up. Thank you, Your Honor. Okay. Ms. Makin. Good morning, and may it please the Court. My name is Lauren Makin on behalf of the United States. The primary guarantee against overly stale criminal charges are statutes of limitations, and that should be the starting point. The defendant here has raised challenges under the Fifth Amendment, which has a limited role in preventing oppressive delay, and the Sixth Amendment, which has no application here, where the defendant was first accused of the federal crime by an indictment in 2017. The District Court powerfully concluded on the Fifth Amendment challenge that neither prong of the exceedingly high standard to establish a Fifth Amendment violation was met. There was no showing of actual prejudice. The defendant didn't identify any witness, document, or evidence lost to him. And the Court's precedent establishes and reflects that speculative allegations of prejudice or allegations that do not bear upon trial rights are not sufficient. And the District Court also concluded that the defendant had not shown what possible advantage the government would gain by waiting to indict the case. So to answer Judge Brasher's question about the need for an evidentiary hearing, the Court properly found that there was no specific and concrete evidence to support an evidentiary hearing here, and that's consistent with this Court's precedent, which, for example, in United States v. Radu, affirmed a decision to decline to hold an evidentiary hearing where allegations of a due process violation were speculative. And so it is not just the need for specific allegations, but also non-speculative specific allegations. And so the Court was well within its discretion to deny an evidentiary hearing in those circumstances. Is there still something, I think it was called petite, is there still a DOJ policy that really requires some weighting or deference in terms of state investigations and pending charges? There is a petty waiver policy that requires DOJ attorneys to consider and seek approval in cases where they may be charging a case that has already been convicted on the same facts by another sovereign. So it's an internal policy, but yes, that does exist. But the District Court also properly found on the Sixth Amendment claim that it was simply not legally viable. There were not any specific allegations that would even support the theory that the defendant set forth about a potential ruse or government agency. The defendant did have an opportunity to issue subpoenas. There were oral arguments in the case. The Court did ask questions of the Assistant United States Attorney in connection with the investigation, and after all of that, made a reasoned decision not to hold an evidentiary hearing because there was simply no specific non-speculative evidence of a Sixth Amendment violation or a Fifth Amendment due process violation. And so this Court should affirm the District Court's denial of the defendant's motions to dismiss. If there are no further questions, I will rest on the briefs. Thank you. Thank you, Ms. Macon. Ms. Strickland. Thank you, Your Honor. As far as the sufficiency of the allegations for the Fifth Amendment claim, the deliberate action, I think I've gone over that pretty well, our position as far as that goes, but How is there a showing of actual prejudice? Yes, Your Honor. So, our specific allegations of prejudice here are that, one, Mr. Pendergrass, you know, has the, what he describes as, you know, significant memory issues that he's actually taking medication for. So that prevents him from remembering the events and exactly what went on, and it's especially a problem here, where it is Mr. McQueen taking all of these actions, and Mr. Pendergrass is needing to remember where he was and specifically about what happened. Don't our precedents require your client to identify the lost evidence, the purpose for which it would have served, and how it would have substantially contributed to his defense? Well, Your Honor, I think there is precedent saying that general allegations of loss of memory or loss of witnesses are insufficient, but I think we're a little more specific here, and it just creates this issue where the problem is he doesn't remember. And so, he should have had the opportunity to testify and demonstrate the issues with his memory and calls by the medication and just general aging and decline and not remembering. So, I think he should have gotten the opportunity to demonstrate that, and a hearing would have given him the ability to do that. There's also the issue with the City of Atlanta records. And so, we have that Mr. Pendergrass' counsel tried to subpoena records from APD, and they came back and said, here's what we have, but we're missing a bunch of these emails, and that is due to this hacking event that happened in the City of Atlanta. And so, we just don't have these records. So, it's hard for Mr. Pendergrass to say, you know, exactly what there could have been because he couldn't get any of it. And that also goes to the problem with proving the Sixth Amendment claim and the tactical advantage aspect of it is this stuff could very well have been relevant to those claims, and APD couldn't produce it because of the hacking event. And so, we needed testimony on it. Mr. Pendergrass needed to be able to call the witnesses, the people that were sending the emails, the people that were talking to the federal government. And the evidentiary hearing is where he should have had the opportunity to do that. So, the issue with the City of Atlanta records kind of folds into both issues as far as the tactical advantage and the prejudice to Mr. Pendergrass because this is all things that were submitted to the City of Atlanta. And again, the investigation started from the City of Atlanta before the federal government got involved and our position is had Atlanta Act as an agent for him, for them. And so, that I think is the specific prejudice. And just to go back to the tactical advantage, I think that the 404B evidence is a sufficient allegation to be able to have an evidentiary hearing on the issue. I know the government cites the Thomas case where the defendants were saying, oh, they waited until the co-defendants or the co-conspirators were convicted and then they came back in closing argument and pointed to the fact that the co-conspirators were convicted. And this court said, well, that's not the tactical advantage because it's just an offhand comment in closing argument and they gave it up so easily. But we don't have that here. We have the 404B being filed almost immediately in this case. Them saying that the need for it is critical and they were fighting to get that in throughout the case and it only didn't come in because the district court excluded it. So that's, I mean, I don't understand that because the evidence didn't come in. So how is that prejudicial? Well, I'm speaking of tactical advantage at this point. What the government was thinking in delaying the indictment in this case is that if we let Ohio go through, which Ohio, you know, that's a federal case. That's the same sovereign here. If we let that go through, then we'll have this 404B evidence and we can corroborate the co-defendant's testimony and we can say, hey, he's been convicted of this same thing. His defense about the state of mind that he didn't know, we can counter that because he's done it before and he's been convicted of it before. And now we can get it in really easily. We don't have to call a bunch of witnesses, make a big showing to the district court to be able to get it in. We have a conviction to point to. So, Your Honor, we would ask that the court vacate Mr. Pendergrass' convictions and remand on an evidentiary hearing on these issues. Thank you. Thank you, Ms. Strickland. You were, again, CJA appointed. We really appreciate you accepting the appointment and ably discharging your duty this morning.